UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| JULIE R. M.,<br><br>                          Plaintiff,<br><br>v.<br><br>KILOLO KIJAKAZI,[1] *Acting Commissioner of Social Security*,<br><br>                          Defendant. | Case No.:  20cv1608-GPC-MDD<br><br>**REPORT AND RECOMMENDATION GRANTING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT AND DENYING DEFENDANT'S CROSS-MOTION FOR SUMMARY JUDGMENT**<br><br>[ECF Nos. 16, 17] |

        Julie R. M. ("Plaintiff") filed this action pursuant to 42 U.S.C. § 405(g) for judicial review of the final administrative decision of the Commissioner of the Social Security Administration ("Commissioner") denying Plaintiff's Title II application for Period of Disability and Disability Insurance Benefits, and Plaintiff's Title XVI application for Supplemental Security Income.  (AR at

---

[1] Kilolo Kijakazi became Acting Commissioner of Social Security on July 9, 2021, and is therefore substituted for Andrew M. Saul as the Defendant in this action. *See* 42 U.S.C. § 405(g); Fed. R. Civ. P. 25(d).

16-32).[2]  Defendant filed a cross-motion and opposition to Plaintiff's motion for summary judgment, asking the Court to affirm the denial of benefits. (ECF No. 17, hereinafter "Oppo.").

For the reasons expressed herein, the Court **RECOMMENDS** Plaintiff's motion for summary judgment be **GRANTED**, Defendant's cross-motion for summary judgment be **DENIED**, and the case be **REMANDED** for further administrative proceedings.

## I.   BACKGROUND

Plaintiff was born in September 1962.  (AR at 30).  On the alleged disability onset date, January 1, 2010, Plaintiff was categorized as a younger individual because she was 47 years old.  20 C.F.R. § 404.1563, 416.963. Plaintiff was 54 years old when the instant application was filed on August 21, 2017, which categorized her as a person closely approaching advanced age.  (AR at 30).

### A.   Procedural History

On August 21, 2017, Plaintiff filed an application for Period of Disability and Disability Insurance Benefits and an application for Supplemental Security Income under Titles II and XVI of the Social Security Act.  (AR at 16).  Plaintiff alleges a disability beginning on January 1, 2010. (*Id.*).  After her applications were denied initially and upon reconsideration, Plaintiff requested an administrative hearing before an administrative law judge ("ALJ").  (AR at 213-14).  An administrative hearing was held on July 29, 2019.  (AR at 38-78).  Plaintiff appeared and was represented by attorney Lisa Mouradian at the hearing.  (AR at 40).  Testimony was taken from

---

[2] "AR" refers to the Certified Administrative Record filed on March 18, 2021.  (ECF No. 12).

Plaintiff and Victoria Rei, an impartial vocational expert ("VE").  (*See* AR at 38-78).  On September 9, 2019, the ALJ issued a decision denying Plaintiff's claims.[3]  (AR at 16-32).

On November 1, 2019, Plaintiff sought review with the Appeals Council. (AR at 258-59).  On July 21, 2020, the Appeals Council denied Plaintiff's request for review and declared the ALJ's decision to be the final decision of the Commissioner of Social Security in Plaintiff's case.  (AR at 1-6).  This timely civil action followed.

## II.   **DISCUSSION**

### A.   **Legal Standard**

Sections 405(g) and 1383(c)(3) of the Social Security Act allow unsuccessful applicants to seek judicial review of a final agency decision of the Commissioner.  42 U.S.C. §§ 405(g), 1383(c)(3).  The scope of judicial review is limited in that a denial of benefits will not be disturbed if it is supported by substantial evidence and contains no legal error.  *Id.*; *see also Batson v. Comm'r Soc. Sec. Admin.*, 359 F.3d 1190, 1193 (9th Cir. 2004).

Substantial evidence "is a 'term of art' used throughout administrative law to describe how courts are to review agency factfinding."  *Biestek v. Berryhill*, 139 S. Ct. 1148, 1154 (2019).  Courts look "to an existing administrative record and ask[] whether it contains 'sufficien[t] evidence' to support the agency's factual determinations."  *Id.*  "[T]he threshold for such evidentiary sufficiency is not high.  Substantial evidence, [the Supreme Court] has said, is 'more than a mere scintilla.'  It means—and means only—

---

[3] As the ALJ's decision explains, Plaintiff previously filed for Title II and Title XVI benefits in 2013.  Her prior claims were denied and are not being reopened.  (*See* AR at 16-17).

'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Id.* The Ninth Circuit explains that substantial evidence is "more than a mere scintilla but may be less than a preponderance." *Molina v. Astrue*, 674 F.3d 1104, 1110-11 (9th Cir. 2012) (quotation marks and citations omitted), *superseded by regulation on other grounds*.

An ALJ's decision is reversed only if it "was not supported by substantial evidence in the record as a whole or if the ALJ applied the wrong legal standard." *Id.* "To determine whether substantial evidence supports the ALJ's determination, [the Court] must assess the entire record, weighing the evidence both supporting and detracting from the agency's conclusion." *Ahearn v. Saul,* 988 F.3d 1111, 1115 (9th Cir. 2021) (citing *Mayes v. Massanari*, 276 F.3d 453, 459 (9th Cir. 2001)). The Court "may not reweigh the evidence or substitute [its] judgment for that of the ALJ." *Id.* "The ALJ is responsible for determining credibility, resolving conflicts in medical testimony, and for resolving ambiguities." *Andrews v. Shalala*, 53 F.3d 1035, 1039 (9th Cir. 1995). "When the evidence can rationally be interpreted in more than one way, the court must uphold the [ALJ's] decision." *Mayes*, 276 F.3d at 459.

Section 405(g) permits a court to enter a judgment affirming, modifying or reversing the Commissioner's decision. 42 U.S.C. § 405(g). The reviewing court may also remand the matter to the Social Security Administration for further proceedings. *Id.*

**B.  Summary of the ALJ's Findings**

In rendering his decision, the ALJ followed the Commissioner's five-step sequential evaluation process. *See* 20 C.F.R. § 404.1520. At step one, the ALJ found that Plaintiff had not engaged in substantial gainful activity since

January 1, 2010.  (AR at 19).

At step two, the ALJ found that Plaintiff had the following severe impairments: "1) a mental impairment variously diagnosed as bipolar disorder/major depressive disorder and PTSD; and 2) obesity."  (*Id.*).

At step three, the ALJ found that Plaintiff did not have an impairment or combination of impairments that met or medically equaled one of the impairments listed in the Commissioner's Listing of Impairments.  (AR at 21) (citing 20 C.F.R. Part 404, Subpart P, Appendix 1 (20 CFR 404.1520(d), 404.1525, 404.1526, 416.920(d), 416.925 and 416.926)).

Next, after considering the entire record, the ALJ determined that Plaintiff had the residual functional capacity ("RFC") to perform medium work with the following limitations:

> [the claimant] could occasionally climb ladders, ropes, or scaffolds and could perform all other postural activities on a frequent basis (climbing ramps and stairs, balancing, stooping, kneeling, crouching, and crawling); could sustain attention and concentration for at least 2-hour intervals at a time for only unskilled work duties as would be consistent with an SVP level of 1 to 2 but no greater than 2; and should also have no greater than the occasional interaction with any coworkers, or supervisors, or members of the general public; and should also not be exposed to any frequent changes in the workplace environment.

(AR at 23).

The ALJ stated that his RFC assessment was based on all the evidence and the extent to which Plaintiff's symptoms are consistent with the objective medical evidence and other evidence.  (*Id.*).  The ALJ also stated that he considered the opinion evidence and prior administrative medical findings in accordance with the requirements of 20 C.F.R. 404.1520c and 416.920c.

The ALJ then proceeded to step four of the sequential evaluation process.  The VE testified that Plaintiff's work history included a

housekeeper/cleaner position and that an individual with the above RFC would be able to perform the job of a housekeeper/cleaner.  (AR at 30).  The ALJ found that this job does not qualify as past relevant work because the evidence does not demonstrate that Plaintiff performed the job at the level of substantial gainful activity.  (*Id.*).

For the purposes of his step five determination, the ALJ accepted the testimony of the VE.  (AR at 31).  The VE identified the jobs of laundry laborer (DOT No. 361.687-018); industrial cleaner (DOT No. 381.687-018); and kitchen helper (DOT No. 318.687-010) as jobs Plaintiff could perform, and which exist in significant numbers in the national economy.  (AR at 31).  The ALJ therefore found that Plaintiff was not disabled.  (AR at 32).

## C.    Issues in Dispute

The Court's review of alleged error by the ALJ was significantly complicated by Plaintiff's counsel's inadequate briefing.  Many of Plaintiff's arguments were underdeveloped and lacked supporting legal authority or were simply incoherent.  The Court is cognizant that Social Security claimants already face long waiting times for resolution of their cases and that Plaintiff's case should not be prejudiced by her counsel's inadequate briefing.  Therefore, the Court considers Plaintiff's arguments to the best of its ability despite these limitations.

The issues in dispute are: (1) whether the ALJ erred in his analysis of the opinions from Plaintiff's treating providers; (2) whether the ALJ erred in his mental functioning RFC determination; (3) whether the ALJ erred in evaluating Plaintiff's subjective symptom testimony; and (4) whether the ALJ erred at step five by finding Plaintiff not disabled based on the Medical-Vocational Guidelines.

### 1.   Medical Opinions

Plaintiff argues that the ALJ erred in finding the opinions by Dr. Tartaglione and Rhonda Smallwood, L.M.F.T. ("Ms. Smallwood") not significantly persuasive.  (Reply at 3).  Defendant argues the ALJ properly found the opinions of Dr. Tartaglione and Ms. Smallwood not significantly persuasive.  (Oppo. at 19-22).

As an initial matter, the parties debate whether the regulatory amendments promulgated by the SSA for cases, such as this one, filed after March 27, 2017 invalidate the treating source rule in the Ninth Circuit.  (*See* MSJ at 15-16, Reply at 2-3, Oppo. at 10-18).  The treating source rule "allowed an ALJ to reject a treating or examining physician's uncontradicted medical opinion only for 'clear and convincing reasons,' and allowed a contradicted opinion to be rejected only for 'specific and legitimate reasons' supported by substantial evidence in the record."  *Kathy Jean T. v. Saul*, No. 20cv1090-RBB, 2021 U.S. Dist. LEXIS 100698, at *14 (S.D. Cal. May 27, 2021) (citing *Trevizo v. Berryhill*, 871 F.3d 664, 675 (9th Cir. 2017)).  The 2017 regulations promulgated by the SSA state that the ALJ need "not defer or give any specific evidentiary weight, including controlling weight, to any medical opinion(s) or prior administrative finding(s), including those from [a claimant's] medical sources."  *See* 20 C.F.R. §§ 404.1520c(a), 416.920c(a).

Plaintiff contends that the Ninth Circuit treating source rule is still applicable despite the new regulations.  (*See* Reply at 2-3).  Through regulation, the Social Security Administration may properly displace judicial precedent when an administrative agency intervenes by providing an "authoritative and reasonable interpretation of a statute."  *See Lambert v. Saul*, 980 F.3d 1266, 1268, 1275 (9th Cir. 2020).  Additionally, the Supreme Court has stated that "[o]nly a judicial precedent holding that the statute

unambiguously forecloses the agency's interpretation, and therefore contains no gap for the agency to fill, displaces a conflicting agency construction." *Nat'l Cable & Telecommunications Ass'n v. Brand X Internet Servs.*, 545 U.S. 967, 982-83 (2005).

The Ninth Circuit has not yet issued a decision clarifying whether it will continue to require an ALJ to include "specific and legitimate reasons" for rejecting contradicted opinions from a claimant's treating providers. District courts in the 9th Circuit generally have determined that the Circuit's prior rule providing deference to treating providers no longer applies because of the new regulations. *See, e.g., Kathy Jean T.*, 2021 U.S. Dist. LEXIS 100698, at \*14 ("This measure of deference to a treating physician is no longer applicable under the 2017 revised regulations."). *But see Kathleen G. v. Comm'r of Soc. Sec.*, 2020 U.S. Dist. LEXIS 210471, at \*7-8 (W.D. Wash. Nov. 10, 2020) (finding that the "specific and legitimate" standard for rejecting contradicted opinions of a treating doctor continues to serve as a "benchmark against which the Court evaluates [the ALJ's] reasoning"). This Court agrees with the numerous district courts that found the treating source rule is inconsistent with the SSA's 2017 regulations, which effectively displace or override it. *See, e.g., Jones v. Saul*, No. 2:19-cv-01273 AC, 2021 U.S. Dist. LEXIS 29751, at \*27 (E.D. Cal. Feb. 16, 2021); *Joseph Perry B. v. Saul*, No. SACV 20-1196-KS, 2021 U.S. Dist. LEXIS 59742, at \*7 (C.D. Cal. Mar. 29, 2021) (citing *Brand X*, 545 U.S. at 981-82). Accordingly, the Court will address the ALJ's evaluation of Dr. Tartaglione's and Ms. Smallwood's opinions under the 2017 regulations. The Court notes that Plaintiff's arguments, although based on the treating source rule, are still capable of analysis under the new regulations.

Under the new regulations, the ALJ is instructed to evaluate the

20cv1608-GPC-MDD

persuasiveness of medical source opinions by considering enumerated factors. 20 C.F.R. §§ 404.1520c(c)(1)-(5); 416.920c(c)(1)-(5).  The "most important factors" are consistency and supportability.  *Id.* §§ 404.1520c(b)(2); 416.920c(b)(2).  The ALJ is not required to explain how they consider the remaining factors (the medical source's relationship with the claimant, specialization, or other factors) unless the ALJ finds that "two or more medical opinions or prior administrative medical findings about the same issue are both equally well supported . . . and consistent with the record . . . but are not exactly the same."  *See* 20 C.F.R. §§ 404.1520c(b)(2-3); 416.920c(b)(2-3).

The revised regulations describe supportability as: "[t]he more relevant the objective medical evidence and supporting explanations presented by a medical source are to support his or her medical opinion(s) . . . , the more persuasive the medical opinion(s) . . . will be."  20 C.F.R. §§ 404.1520c(c)(1), 416.920c(c)(1).  Consistency is described as: "[t]he more consistent a medical opinion(s) . . . is with the evidence from other medical sources and nonmedical sources in the claim, the more persuasive the medical opinion(s) . . . will be."  20 C.F.R. §§ 404.1520c(c)(2), 416.920c(c)(2).

### a.    Dr. Tartaglione

Dr. Tartaglione is a psychiatrist who began treating Plaintiff in September 2017.  (AR at 1330).  On June 18, 2019, Dr. Tartaglione found Plaintiff "has marked limitations and is not able to sustain work."  (MSJ at 15, AR at 1330-35).  The ALJ found Dr. Tartaglione's opinion had "no significant persuasiveness," in relevant part, because his treatment notes did not support his own opinion.  (AR at 27-28).

### i.    Supportability

Plaintiff argues conflict within treating notes is insufficient to negate

the opinion.  (MSJ at 15, Reply at 7).  Defendant contends it is proper to find an opinion less persuasive when clinical findings do not support the degree of limitations found in an opinion.  (Oppo. at 19).

Inconsistency between a physician's treatment notes and their opinion is an acceptable reason to discount the source's opinion.  *See, e.g.*, *Valentine v. Comm'r Soc. Sec. Admin.,* 574 5.3d 685, 692-93 (9th Cir. 2009); *Bayliss v. Barnhart,* 427 F.3d 1211, 1216 (9th Cir. 2005); *Jones v. Saul,* No. 2:19-cv-01273 AC, 2021 U.S. Dist. LEXIS 29751, at *29 (E.D. Cal. Feb. 16, 2021) (holding in the context of the 2017 revised regulations, that the ALJ reasonably found a treating physician's opinion was not persuasive where it was inconsistent with the doctor's own treatment notes).

The ALJ specifically identified two inconsistencies within Dr. Tartaglione's treatment notes and his opinion.  (AR at 28).  First, the ALJ explained that Dr. Tartaglone's opinion was not supported by his October 2017 mental examination which found Plaintiff was alert and oriented times three, had cooperative behavior, normal speech, articulate language, linear thought process, appropriate associations, normal thought content, no delusions, no suicidal ideation, no homicidal ideation, appropriate judgment and insight, appropriate fund of knowledge, appropriate attention span/concentration, and appropriate memory, with euthymic mood.  (AR at 28, 720).  Second, on June 18, 2019, Dr. Tartaglione found Plaintiff was cooperative with normal speech, articulate language, linear thought process, appropriate associations, normal thought content, no delusions, no suicidal ideation, no homicidal ideation, was alert and oriented times three, had appropriate judgment and insight, appropriate fund of knowledge, appropriate attention span/concentration, and appropriate memory, with euthymic mood.  (AR at 1202-03).

The Court's review of all of Dr. Tartaglione's mental examination notes reveals that during each examination he made mental examination findings that were nearly identical to those referenced by the ALJ. (*See* AR at 680-83, 715-22, 1202-05, 1209-16, 1224-35, 1244-47). The treating notes referenced by the ALJ are fair examples of how the opinion of this treating provider was insufficiently supported, rather than inconsistencies read out of context, as Plaintiff implies. (Reply at 6-7). Accordingly, the Court finds that the ALJ properly determined Dr. Tartaglione's June 18, 2019 opinion was not supported by his own treatment records.

### ii.   Consistency

Plaintiff next argues the ALJ errantly assessed Dr. Tartaglione's opinion because it is consistent with the opinions of Dr. DiFrancesca, Ph.D., Psychiatrist Dr. Watkins, Psychiatrist Dr. Peng, and Psychiatrist Stemen who found Plaintiff has bipolar disorder with hypomania and one major depressive episode and that she has difficulty communicating and getting along with others.[4] (*See* MSJ at 14-16, Reply at 2). Defendant counters that the ALJ's finding was consistent with the evidence from other sources. (Oppo. at 20).

In support of her argument, Plaintiff cites her discharge summary from Patton State Hospital, completed by Dr. Peng. (MSJ at 14). This summary included a bipolar disorder diagnosis, but otherwise did not make the findings Plaintiff describes. (*See* AR at 373-75). Plaintiff provides no

---

[4] Plaintiff also argues that Psychotherapist Rhonda Smallwood, L.M.F.T.'s evaluation is consistent with Dr. Tartaglione's. (Reply at 2, AR at 733-38). However, as the Court discusses below, the ALJ found "no significant persuasiveness" in Ms. Smallwood's opinion, and the Court agrees with the ALJ's analysis. (AR at 29, 733-38).

20cv1608-GPC-MDD

argument explaining what the evaluations by Dr. Watkins and Psychiatrist Stemen were or how they were consistent with Dr. Tartaglione's opinion. The Court is unable to identify any opinions or records by Dr. Watkins or Dr. Stemen within the Administrative Record.

Katherine R. DiFrancesca, Ph.D., conducted a psychological evaluation of Plaintiff on June 15, 1999. (AR at 91-95). Dr. DiFrancesca's findings include that Plaintiff has a bi-polar disorder with hypomania and has had at least one major depressive episode, but otherwise do not include specific findings regarding Plaintiff's mental capacity. (AR at 91-94, MSJ at 14). Based on the foregoing, the Court finds the sources highlighted by Plaintiff are insufficient to disturb the ALJ's finding that Dr. Tartaglione's opinion was not consistent with the overall evidence. *See Mayes*, 276 F.3d at 459 ("When the evidence can rationally be interpreted in more than one way, the court must uphold the [ALJ's] decision.").

### b.  Ms. Smallwood

Plaintiff has been receiving therapy from Rhonda Smallwood, L.M.F.T. since 2004. (AR at 733). Plaintiff argues that Ms. Smallwood's evaluation that Plaintiff's episodes of major depression can last two to three months is consistent with Dr. Tartaglione's opinion. (Reply at 2, AR at 737). The ALJ found "no significant persuasiveness" in Ms. Smallwood's December 2017 opinion. (AR at 29, 733-38). Plaintiff appears to argue that the ALJ's finding was erroneous; however, Plaintiff raises this argument without specificity, explaining only that Plaintiff saw Ms. Smallwood consistently and that Ms. Smallwood was a specialist in mental health. (*See* MSJ at 16, Reply at 4). The Court is not required to address issues raised without specificity. *See Carmickle v. Comm'r, Soc. Sec. Admin.*, 533 F.3d 1155, 1161 n.2 (9th Cir. 2008).

20cv1608-GPC-MDD

Even if Plaintiff had specifically raised the argument, the ALJ appropriately addressed the mandatory factors of supportability and consistency.  *See* 20 C.F.R. §§ 404.1520c(b)(2), 416.920c(b)(2) (2017); (AR at 29) (finding Ms. Smallwood's records do not describe mental status examination findings supporting her recommended limitations and that her opinion is inconsistent with the overall medical record describing "generally unremarkable findings") (citing AR at 405-06, 436, 460, 483-84, 529, 720, 737, 1202-03, 1292-1310).

### c.   Specialization and Long-Term Treatment

Finally, Plaintiff argues the ALJ was required to address Dr. Tartaglione and Ms. Smallwood as specialists in mental health and sources with a long-term relationship with the claimant.  (*See* Reply at 3).  The ALJ was only required to evaluate supportability and consistency because he did not find two or more medical opinions or prior administrative medical findings about the same issue to be equally well supported and consistent with the record, but not exactly the same.  (*See* AR at 27-29).  As a result, the ALJ did not err by omitting his reasoning regarding the factors of specialization and relationship with the claimant as Plaintiff contends.  *See* 20 C.F.R. § 416.920c(b)(2) ("We may, but are not required to, explain how we considered the factors in paragraphs (c)(3) through (c)(5) of this section, as appropriate, when we articulate how we consider medical opinions and prior administrative medical findings in your case record.").  Based on the foregoing, the ALJ sufficiently evaluated Dr. Tartaglione's and Ms. Smallwood's opinions.

### 2.   Mental RFC Determination

Plaintiff argues that the ALJ's mental RFC determination was not supported by substantial evidence.  (Reply at 5).  The argument is

underdeveloped and lacks any meaningful analysis.  (MSJ at 16-17, Reply at 5-6).  Additionally, it is dependent on Plaintiff's prior arguments that the ALJ improperly addressed the medical opinions of Dr. Tartaglione and Ms. Smallwood.  The Court has already determined that the ALJ properly assessed the medical opinion evidence.  Therefore, Plaintiff has not established that the ALJ's mental RFC determination is unsupported by substantial evidence.  *See Carmickle*, 533 F.3d at 1161 n.2 (arguments raised without specificity need not be addressed).

### 3.   Plaintiff's Subjective Symptom Testimony

Plaintiff makes several incoherent arguments regarding her subjective symptom testimony and the RFC regarding her knee and hip disorder.[5]  (MSJ at 17-23).  The only clear argument is that the ALJ failed to provide sufficient reasons to reject her testimony regarding her knee and hip limitations.  (MSJ at 21-22, Reply at 7-8).  Plaintiff explains that she testified about her knee and hip injuries and the pain that results when she exerts herself.  (MSJ at 18, 20).  Defendant counters that the ALJ "explicitly addressed Plaintiff's claims of disabling knee and hip-related pain and evaluated how Plaintiff's alleged pain impacted her functioning, if at all."  (Oppo. at 23).

At the administrative hearing, Plaintiff testified that she has pain in her knees and hips as a result of being involved in five major motor accidents.  (AR at 57).  Plaintiff testified that she can stand for about 15 minutes and

---

[5] To the extent that Plaintiff argues the ALJ erred by discrediting Plaintiff's subjective symptom testimony about her mental limitations without clear and convincing reasons, her argument fails.  (*See* Reply at 7-8).  Plaintiff contends her activities of daily living are insufficient to reject her testimony.  (MSJ at 16-17, Reply at 7).  The argument is underdeveloped, and in any event, the ALJ provided specific, clear, and convincing reasons to reject her testimony.  (AR at 21-22, 24) (comparing Plaintiff's testimony with the medical evidence of record and her daily activities and providing conclusions regarding the four "paragraph B" criteria for evaluating Plaintiff's mental impairment).

can sit for about an hour, but experiences pain in her hips while sitting. (AR at 59). She testified that she "was not able to do cleaning work . . . . After these car accidents, I can't take it anymore. I just can't . . . . I cannot sit down and clean and reach under things, I can't do it." (AR at 77).

The ALJ only referenced her knee and hip pain testimony by noting, "She was on ibuprofen and said she now takes Tylenol 4,000 mg per day for knee and hip pain." (AR at 24). The ALJ then determined,

> "After careful consideration of the evidence, I find that the claimant's medically determinable impairments could reasonably be expected to cause the alleged symptoms; however, the claimant's statements concerning the intensity, persistence and limiting effects of these symptoms are not entirely consistent with the medical evidence and other evidence in the record for the reasons explained in this decision."

(*Id.*).

The ALJ further stated,

> "As for the claimant's statements about the intensity, persistence, and limiting effects of her symptoms, they are inconsistent because objective findings are not remarkable, especially physically, and include normal gait, normal back range of motion, 5/5 motor strength, intact sensation and deep tendon reflexes, no edema, normal hip findings, full range of motion of all extremity joints, and/or full range of motion of the right or right and left knee joints. Exhibits 4F/2-3; 7F/29, 38, 56, 60; 8F/8; 14F/56, 66."

(*Id.*).

"[W]here, as here, the ALJ 'determines that a claimant for Social Security benefits is not malingering and has provided objective medical evidence of an underlying impairment which might reasonably produce the pain or other symptoms she alleges, the ALJ may reject the claimant's testimony about the severity of those symptoms only by providing specific, clear, and convincing reasons for doing so.'" *Lambert v. Saul*, 980 F.3d 1266, 1277 (9th Cir. 2020) (quoting *Brown-Hunter v. Colvin*, 806 F.3d 487, 488-89

1   (9th Cir. 2015)).  "An ALJ does not provide specific, clear, and convincing

2   reasons for rejecting a claimant's testimony by simply reciting the medical

3   evidence in support of his or her residual functional capacity determination."

4   *Brown-Hunter*, 806 F.3d at 489.  The ALJ is required to "specify which

5   testimony [he] finds not credible, and then provide clear and convincing

6   reasons, supported by evidence in the record, to support that credibility

7   determination."  *Id.*  A "line-by-line exegesis of the claimant's testimony" is

8   not required, but the ALJ must do more than offer "non-specific conclusions

9   that [the claimant's] testimony was inconsistent with her medical treatment."

10  *Lambert*, 980 F.3d at 1277.

11          The Court finds the ALJ erred by failing to specifically identify what

12  testimony about Plaintiff's alleged knee and hip pain he found not credible.

13  The ALJ generically found that "the claimant's statements concerning the

14  intensity, persistence and limiting effects of these symptoms are not entirely

15  consistent with the medical evidence and other evidence in the record for the

16  reasons explained in this decision." (AR at 24).  The Ninth Circuit has

17  repeatedly found this language to be insufficient and "boilerplate." *See*

18  *Lambert*, 980 F.3d at 1277; *Treichler v. Comm'r of Soc. Sec. Admin.*, 775 F.3d

19  1090, 1103 (9th Cir. 2014); *see also Brown-Hunter*, 806 F.3d at 493 (finding

20  the statement to be "conclusory" and that it "failed to identify specifically

21  which of Brown-Hunter's statements she found not credible and why").  This

22  Court "cannot review whether the ALJ provided specific, clear, and

23  convincing reasons for rejecting [Plaintiff's] pain testimony where, as here,

24  the ALJ never identified *which* testimony [he] found not credible, and never

25  explained *which* evidence contradicted that testimony."  *Lambert*, 980 F.3d at

26  1277 (quoting *Brown-Hunter*, 806 F.3d at 494); *see also Vladimir B. v. Saul*,

27  No. 19-cv-00779-WQH-JLB, 2021 U.S. Dist. LEXIS 18663, at *51-53 (S.D.

Cal. Jan. 29, 2021) (finding the ALJ erred by not adequately identifying the statements or testimony he sought to discredit); *Eldridge v. Berryhill*, No. 17cv497-JLS (BLM), 2018 U.S. Dist. LEXIS 87985, at *22-23 (S.D. Cal. May 23, 2018) ("The ALJ's vague references to Plaintiff's statements as 'allegations of disabling limitations' are not specific identifications of which statements are being discredited."), adopted by *Eldridge v. Berryhill*, No. 17-CV-497-JLS (BLM), 2018 U.S. Dist. LEXIS 113699, (S.D. Cal. July 9, 2018).

While the ALJ provided a detailed overview of Plaintiff's medical history, "providing a summary of medical evidence . . . is not the same as providing clear and convincing *reasons* for finding the claimant's symptom testimony not credible." *Brown-Hunter*, 806 F.3d at 494. The Court cannot infer that the ALJ discredited Plaintiff's testimony to the extent that it conflicted with the medical evidence where the ALJ does not provide his reasoning. *Id.* The Court agrees with Defendant that the ALJ identified medical evidence that contradicts the degree of limitations Plaintiff alleged regarding her hip and knee pain and functionality. (*See* Oppo. at 23-24). While it would not be difficult to fill in the ALJ's reasoning given his description of the conflicting medical evidence, the ALJ is solely responsible for making credibility determinations. *Lambert*, 980 F.3d at 1278 (citing *Brown-Hunter*, 806 F.3d at 494) ("'[T]he credibility determination is exclusively the ALJ's to make,' and '[w]e are constrained to review the reasons the ALJ asserts.'"); *Garrison v. Colvin*, 759 F.3d 995, 1010 (9th Cir. 2014) ("We review only the reasons provided by the ALJ in the disability determination and may not affirm the ALJ on a ground upon which he did not rely."). Accordingly, this Court lacks authority to fill in the ALJ's reasoning.

The Court must next consider whether the error was harmless. "An error is harmless only if it is inconsequential to the ultimate nondisability determination, or if despite the legal error, the agency's path may reasonably be discerned." *Brown-Hunter*, 806 F.3d at 494 (citations and internal quotation marks omitted).

*Lambert*, *Brown-Hunter*, and *Treichler* found errors based on failure to provide "specific, clear, and convincing reasons" for rejecting Plaintiff's subjective symptom testimony not harmless. *See Lambert*, 980 F.3d at 1278; *Brown-Hunter*, 806 F.3d at 494-95; *Treichler*, 775 F.3d at 1103. Similarly, here, the ALJ did not identify what testimony from Plaintiff he found not credible. The Court must find this error was not harmless "because it precludes us from conducting a meaningful review of the ALJ's reasoning." *Brown-Hunter*, 806 F.3d at 489.

Further, Plaintiff's testimony that she "cannot sit down and clean and reach under things," continues to have pain in her knees and hips, "can sit down for maybe an hour maximum" and "stand about 15 minutes" appears inconsistent with the ALJ's RFC determination that she could climb ramps and stairs, balance, stoop, kneel, crouch, and crawl on a frequent basis. (AR at 23, 57-60, 77). The ALJ's adverse finding regarding the severity of Plaintiff's knee and hip pain was therefore not "inconsequential to the ultimate nondisability determination." *Brown-Hunter*, 806 F.3d at 494.

Accordingly, this Court recommends the District Court determine that the ALJ's failure to provide "specific, clear, and convincing reasons" for rejecting Plaintiff's testimony regarding her knee and hip limitations and pain was legal error and the error was not harmless.

### 4.   The ALJ's Step Five Finding

Lastly, Plaintiff argues that the ALJ erred at step five by finding

Plaintiff not disabled under the Medical-Vocational Guidelines when the ALJ's RFC determination significantly reduced the range of medium work Plaintiff could perform.  (MSJ at 22-24).

Plaintiff's argument lacks merit because the ALJ did not rely on the Medical-Vocational Guidelines, commonly referred to as "the grids," in determining that Plaintiff was not disabled at step five.  (AR at 31) ("The vocational expert testified that given all of these factors the individual would be able to perform the requirements of representative occupations . . ."). Instead, the ALJ appropriately relied on VE testimony that a hypothetical individual with Plaintiff's RFC and subject to the relevant additional postural, environmental, and mental limitations, would be capable of performing the representative occupations identified at step five.  *See generally*, *Thomas v. Barnhart*, 278 F.3d 947, 955 (9th Cir. 2002) ("The Commissioner can meet this burden [of establishing that the claimant can perform a significant number of other jobs in the national economy] through the testimony of a vocational expert or by reference to the Medical-Vocational Guidelines at 20 C.F.R. pt. 404, subpt. P, app. 2.").

## III.   **REMAND FOR FURTHER PROCEEDINGS**

The law is well established that the decision whether to remand for further proceedings or simply to award benefits is within the discretion of the Court.  *See, e.g.*, *Salvador v. Sullivan*, 917 F.2d 13, 15 (9th Cir. 1990); *McCallister v. Sullivan*, 888 F.2d 599, 603 (9th Cir. 1989); *Lewin v. Schweiker*, 654 F.2d 631, 635 (9th Cir. 1981).  Remand for further proceedings is warranted where additional administrative proceedings could remedy defects in the decision.  *See, e.g.*, *Kail v. Heckler*, 722 F.2d 1496, 1497 (9th Cir. 1984); *Lewin*, 654 F.2d at 635.  When error exists in an administrative determination, "the proper course, except in rare

circumstances, is to remand to the agency for additional investigation or exploration." *INS v. Ventura*, 537 U.S. 12, 16 (2002) (citations and quotation marks omitted); *Moisa v. Barnhart*, 367 F.3d 882, 886 (9th Cir. 2004). Accordingly, this case should be remanded for further administrative action consistent with the findings presented herein.

## IV.   **CONCLUSION**

Based on the foregoing, the Court **RECOMMENDS** that the District Court **GRANT** Plaintiff's motion for summary judgment, **DENY** Defendant's cross-motion for summary judgment, and **REMAND** this case for further administrative action consistent with the findings presented herein.  This Report and Recommendation of the undersigned Magistrate Judge is submitted to the United States District Judge assigned to this case, pursuant to the provisions of 28 U.S.C. § 636(b)(1) and Local Civil Rule 72.1(c) of the United States District Court for the Southern District of California.

**IT IS HEREBY ORDERED** that any written objection to this report must be filed with the Court and served on all parties no later than **November 9, 2021**.  The document should be captioned "Objections to Report and Recommendation."

**IT IS FURTHER ORDERED** that any reply to the objections shall be filed with the Court and served on all parties no later than **November 16, 2021**.  The parties are advised that failure to file objections within the specified time may waive the right to raise those objections on appeal of the Court's order.  *Martinez v. Ylst*, 951 F.2d 1153 (9th Cir. 1991).

**IT IS SO ORDERED.**

Dated:   October 26, 2021

Hon. Mitchell D. Dembin
United States Magistrate Judge

20cv1608-GPC-MDD